UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Criminal No. 11-CR-0175 (MJD/LIB)

v.                                           **REPORT AND RECOMMENDATION**

REGINALD JOHN WIND, JR.,

Defendant.

---

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendant's motion to suppress statements, admissions, or answers he gave in response to questioning by law enforcement. A Hearing was held on July 15, 2011, at which time the Defendant appeared personally, and by his attorney, Douglas Olson, and the Government appeared by Deidre Y. Aanstad, Assistant United States Attorney.

**I.      FACTS**

The government charged the Defendant with a violation of 18 U.S.C. § 1153; 2241(c) and 2246(2)(C) for abusive sexual contact with a child. On April 7, 2011, FBI Special Agent Michael J. Iverson, along with a colleague, interviewed the Defendant in a conference room in the Red Lake Detention Center regarding the alleged abuse of a child. At this time, the Defendant was in custody in the Red Lake Detention Center. Agent Iverson estimated that the conference room was 15 feet by 30 feet with two windows that were either tinted or covered by blinds. Agent Iverson testified that the Defendant was not placed in handcuffs, had a clear path to an unlocked door, and sat across from Agent Iverson and his colleague. Moreover, Agent Iverson stated that he did not make any threats or promises in exchange for his cooperation. Additionally,

Agent Iverson observed that the Defendant did not appear to be under the influence of alcohol or drugs or appear to have any mental health disabilities.

Before interviewing the Defendant, the officers explained that they were there to ask the Defendant some questions about the incident for which he had been arrested the day before. Thereafter, Officer Iverson read the Defendant FD-395, the FBI's Advice of Rights form, which states:

> Before we ask you any questions, you must understand your rights.
>
> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

(FD-395, Govt.'s Ex. 1).  After reading the form to the Defendant, the officers let the Defendant read it and asked him if he understood it.  Agent Iverson then read him the bottom of the form which states, "I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  After reading this sentence, Agent Iverson asked the Defendant if the sentence was correct and asked him to sign the form. The Defendant indicated he understood his rights, and he signed the form.

After the Defendant signed the form, Agent Iverson and his colleague questioned the Defendant for about a half an hour.  During this time, the Defendant did not ask for any breaks

nor did he ask for any water or food.  Agent Iverson testified that the Defendant could have used the phone or bathroom if he asked.

Agent Iverson stated that he did not make any promises to the Defendant about what the prosecutor or court would do in exchange for his testimony, use any tricks to illicit testimony, or make untruthful statements in order to encourage the Defendant to answer his questions.  Agent Iverson testified that the Defendant seemed friendly and cooperative.  The Defendant never confessed to a crime.

The Defendant mentioned an attorney only once during the interview when the agents asked whether the Defendant would be willing to undergo a polygraph test.  The Defendant stated that he would want to talk to a lawyer before undergoing such a procedure.   After the Defendant stated he would not undergo a polygraph procedure without advice from a lawyer, Agent Iverson clarified with the Defendant that he was still willing to continue to answer the agents' current questions without a lawyer.

No recording of the interview was taken, but the agents wrote a summary of it.  Moreover, Agent Iverson testified that he did not try to contact the Defendant's tribal advocate[1] before the hearing or even try to determine whether he had a tribal advocate beforehand.  He further testified that usually the FBI does not contact a tribal advocate before an interview.

Later, on April 22, 2011, the agents tried to talk with the Defendant again, but he declined to speak with them a second time.

The Defendant asks the Court to suppress the statements made at the Red Lake Detention Center on April 7, 2011.  The Court considers the Defendant's request below.

---

[1] A tribal advocate is typically not an attorney at law.  There was no evidence introduced that Defendant was represented by an attorney at law at the time of the interview at issue.

II.      **STANDARD OF REVIEW**

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

Before questioning begins of a suspect in custody, law enforcement must inform the Defendant: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed for him. Miranda, 384 U.S. at 444. To be a valid Miranda warning, law enforcement officers must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." Id. at 467. After a Miranda warning is given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. Id. at 473–74.

However, a defendant can waive Miranda rights as long as the waiver is voluntary, knowing, and intelligent. United States v. Bell, 477 F.3d 607, 612 (8th Cir. 2007). The Government must demonstrate by a preponderance of the evidence that the suspect's waiver meets these standards. Miranda, 384 U.S. at 473. "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences

of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception."  Bell, 477 F.3d at 612 (citations and quotations omitted).[2] To determine whether a waiver is voluntary, knowing, and intelligent depends on the totality of the circumstances.  Moran v. Burbine, 475 U.S. 412, 421 (1986); Dickerson v. United States, 530 U.S. 428, 433-34 (2000).

"A waiver is voluntary if it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006), cert. denied, 549 U.S. 1273 (2007).  When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434.   Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired."  United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure.  United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998).  Courts consider a multitude of factors including the age of the defendant, the level of education of the defendant, the lack of advice to the accused on his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment.  Schneckcloth v. Bustamonte, 412 U.S. 218, 226 (1973); see also United States v.

---

[2] Courts examine the age and education level of the defendant, lack of advice as to constitutional rights, length of detention, "repeated and prolonged nature of questioning," and the use of physical punishment.  Tippitt v. Lockhart, 859 F.2d 595, 598 (8th Cir. 1988).

Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005)(stating that "officers elicit confessions through a variety of tactics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices . . . None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation cause the defendant's will to be overborne.") (quotations and citation omitted).

## III.   DISCUSSION

Neither party disputes that the Defendant was in custody when he spoke to the FBI Agents therefore triggering the requirements of Miranda. The Defendant asks the Court to suppress the statements made on April 7, 2011at the Red Lake Detention Center on two grounds. First, the Defendant contends that the Miranda warning was insufficient.  Second, the Defendant asserts that the waiver of his Miranda rights was not knowing and voluntary.[3]

As to the adequacy of the Miranda warning, the Court finds that the Advice of Rights form that Officer Iverson testified he gave the Defendant constituted a valid Miranda warning. The form provided that the Defendant had the right to remain silent, that the statements could be used against him in a court of law, that he had the right to an attorney, and that an attorney would be appointed for him if he could not afford one.  Miranda, 384 U.S. at 444.  In addition, the form advised the Defendant of his right to stop the questioning at any time if he decided that he wanted a lawyer present.

Turning to whether the Defendant's waiver of his Miranda rights was knowing, intelligent, and voluntary, the Court finds that the totality of the circumstances supports the Government's contention that the Defendant's wavier was knowing, intelligent, and voluntary.

---

[3] In his initial motion and written submissions, the Defendant also argued that the statements were the product of an illegal, warrantless arrest.  However, the Defendant withdrew that argument on the record at the hearing regarding the present motion.

The Court concludes that the waiver was knowing and intelligent because after the FBI agent read the Defendant his rights, the Defendant waived his rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Syslo, 303 F.3d at 865.  Here, after the FBI agent read the Defendant the Advice of Rights of form, the officer let the Defendant also read the form himself.  Moreover, the Defendant signed the form which stated that, "I have read this statement and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  Before the Defendant signed the form, Agent Iverson expressly asked the Defendant if the sentence was correct, and the Defendant acknowledged he understood his rights.  Thus, the Defendant expressly acknowledged that he understood his rights, including his right to an attorney, and still agreed to speak to law enforcement officers.  See United States v. Gallardo, 495 F.3d 982, 991 (8th Cir. 2007)("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . . "); United States v. Karbedeh, 2010 WL 3521984 at *12 (D. Minn. Aug. 11, 2010) (finding waiver to be knowing and intelligent in part because the defendant signed a form indicating that he understood all his Miranda rights and then waived those rights).  Beyond the Defendant's written acknowledgement on the Advice of Rights form, other facts demonstrate that the waiver was knowing and intelligent.  Agent Iverson testified that the Defendant did not appear to be under the influence of alcohol or drugs and did not appear to have any mental health disabilities.

Furthermore, the Court also finds that the Defendant's "will was not overborne" by law enforcement conduct such that the waiver of his Miranda rights was not voluntary.  Dickerson, 530 U.S. at 434.   The evidence shows that no threats, promises, violence, or untruths were used to obtain the Defendant's statements. No evidence was presented to the Court showing that law

7

enforcement exerted any pressure on the Defendant to speak with them.  In fact, Agent Iverson

testified that the Defendant was friendly and cooperative demonstrating that he did not feel

compelled to speak.  Additionally, the entire interview only lasted a half an hour which cannot be

considered so lengthy that undue pressure was exerted on the Defendant.

Lastly, the Court finds that the Defendant's response to the FBI Agents when asked if he

would undergo a polygraph test indicating that he would like to speak to an attorney beforehand

did not negate the waiver of his <u>Miranda</u> rights.  The <u>Miranda</u> right to counsel only attaches when

a suspect invokes the right during an interrogation by making a clear and unequivocal request for

counsel.  <u>See</u> <u>Davis v. United States</u>, 512 U.S. 452, 458-59 (1994).  Here, no such request was

made. The Defendant in no way indicated his desire to have counsel assist him in answering

questions during any portion of the April 7, 2011 interview, but instead only indicated that he

would like to talk to an attorney before undergoing a possible polygraph test at some point in the

future.  In fact, Agent Iverson specifically clarified that despite the Defendant's comment about

an attorney in the future in the context of a possible polygraph test, he was still willing to talk to

the FBI Agents on April 7, 2011; Agent Iverson asked the Defendant whether he would continue

to answer their current questions, and the Defendant indicated that he was willing.

## IV.    CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

## IT IS HEREBY RECOMMENDED

1.    That Defendant's Motion to Suppress Statements, Admissions and Answers

[Docket No. 23] be **DENIED**.

Dated: July 28, 2011                                      s/Leo I. Brisbois
                                                          LEO I. BRISBOIS
                                                          United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by August 11, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.